**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

ACCURATE CONTROLS, INC.,

      Plaintiff and Counterclaim
      Defendant,

vs.

CERRO GORDO COUNTY BOARD OF
SUPERVISORS, DEAN SNYDER
CONSTRUCTION CO., and
MERCHANTS BONDING COMPANY
(MUTUAL),

      Defendants and
      Counterclaimants,

and

KEVIN PALS, in his capacity as Sheriff
of Cerro Gordo County,

      Intervenor,

vs.

ACCURATE CONTROLS, INC.,

      Plaintiff and Counterclaim
      Defendant.

No. C 08-3021-MWB

(No. C 08-3035-MWB)

(No. C 09-3001-MWB)


**MEMORANDUM OPINION AND
ORDER REGARDING THE
PARTIES' CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        *1.  The parties, the project, and the bids* . . . . . . . . . . . . . . . . 4
        *2.  Payment applications* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        *3.  Certifications of acceptance of the project* . . . . . . . . . . . . . 5

    **B. Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        **1.** *Accurate's first lawsuit* . . . . . . . . . . . . . . . . . . . . . . . 6
        **2.** *Accurate's second lawsuit* . . . . . . . . . . . . . . . . . . . . . 6
        **3.** *Accurate's third lawsuit* . . . . . . . . . . . . . . . . . . . . . . 7
        **4.** *The cross-motions for summary judgment* . . . . . . . . . . . . . 8
        **5.** *The proposal to certify questions* . . . . . . . . . . . . . . . . . 11

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    **A. Standards For Summary Judgment** . . . . . . . . . . . . . . . . . . . . . . 12
    **B. The Cross-Motions For Summary Judgment** . . . . . . . . . . . . . . . . . 13
        **1.** *Subject matter jurisdiction* . . . . . . . . . . . . . . . . . . . . 13
            **a.** *Arguments of the parties* . . . . . . . . . . . . . . . . 14
            **b.** *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        **2.** *Timeliness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            **a.** *Arguments of the parties* . . . . . . . . . . . . . . . . 20
            **b.** *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        **3.** *Section 573.15's requirements* . . . . . . . . . . . . . . . . . . 22
            **a.** *Applicability* . . . . . . . . . . . . . . . . . . . . . . . . 23
                **i.** *Arguments of the parties* . . . . . . . . . . . . . 23
                **ii.** *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . 25
            **b.** *Satisfaction of § 573.15's requirements* . . . . . . . . . 40
                **i.** *Arguments of the parties* . . . . . . . . . . . . . 40
                **ii.** *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . 43
        **4.** *Accurate's permissible recovery* . . . . . . . . . . . . . . . . . 52
            **a.** *Arguments of the parties* . . . . . . . . . . . . . . . . 52
            **b.** *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . 52
        **5.** *Continued viability of a Chapter 573 claim against the County*
           *Board* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
            **a.** *Arguments of the parties* . . . . . . . . . . . . . . . . 53
            **b.** *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . 53

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

A sub-subcontractor for electronic security systems for a new county jail has brought three actions, now consolidated, pursuant to IOWA CODE CH. 573 to recover payment from the general contractor, the contractor's surety, and the county board of supervisors after the electrical subcontractor that directly employed the sub-subcontractor walked off the job and closed its doors without paying the sub-subcontractor. The county sheriff intervened and joined with the county board of supervisors to assert various fraud and other claims against the sub-subcontractor and to seek a temporary restraining order and preliminary injunction to compel the sub-subcontractor to provide and install the permanent operating licenses for the jail's electronic security system. Presently before the court are the original parties' cross-motions for summary judgment on various aspects of the sub-subcontractor's Chapter 573 claim.

## I. INTRODUCTION

### A. Factual Background

The court will not attempt here an exhaustive dissertation on the undisputed and disputed facts in this case, despite the extensive Statements of Facts submitted by the parties in support of and resistance to the cross-motions for summary judgment. Rather, the court will set forth sufficient of the facts, both undisputed and disputed, to put in context the parties' arguments concerning their cross-motions for summary judgment. Indeed, the facts necessary to explain the context of the parties' cross-motions for summary judgment in this case are a relatively small subset of the facts that might otherwise be relevant to the disposition of all of the parties' claims and defenses, where the issues presented in the cross-motions are primarily legal issues. Additional factual allegations—and the extent to which they are or are not disputed or material—will be discussed, if necessary, in the court's legal analysis.

### 1. *The parties, the project, and the bids*

In 2006, the defendant Cerro Gordo County Board of Supervisors (the County Board) let for public bids a public improvement project identified as the Cerro Gordo County Law Enforcement Center Project (the Jail Project), for construction of a new county jail located in Cerro Gordo County, Iowa. The Jail Project was let as a design-bid-build delivery system using a single prime contractor. The successful bidder for the Jail Project was defendant Dean Snyder Construction (DSC). As required by law, DSC furnished a bond for the Jail Project through defendant Merchants Bonding Company (Merchants).

Prior to DSC's bid on the Jail Project, DSC received a lump-sum bid for electrical subcontractor work from Wubbens Electric, and prior to that, Wubbens Electric had received a lump-sum bid on electronic security systems from plaintiff Accurate Controls, Inc. (Accurate). Accurate had also submitted its bid to other electrical subcontractors who were bidding on the Jail Project. Accurate was one of the approved controls contractors listed in the contract specifications for the Jail Project from the County Board. After the County Board accepted DSC's bid, DSC entered into a subcontract for electrical work with Wubbens Electric. The parties agree that, before DSC accepted Wubbens Electric's bid, Wubbens Electric had informed DSC that it was going to use Accurate for the work under Division 17 of the specifications, which pertained to the electronic security systems. Indeed, the subcontract between DSC and Wubbens expressly provided "Accurate controls [sic] to be subcontracted for all Division 17 work by Wubbens and included in this contract." Defendants' Appendix at 171. Wubbens Electric, in turn, entered into a Purchase Order contract with Accurate for the security systems part of the Jail Project for the lump-sum amount of $525,950.00, which included labor and materials for the electronic security systems for the Jail Project.

## 2.    *Payment applications*

DSC, Wubbens Electric, and Accurate all engaged in work on the Jail Project. Accurate submitted payment applications to Wubbens Electric, *inter alia*, in December 2007 for $242,587.15, which, with a 5% retainage, resulted in a current payment due of $230,457.78, and in January 2008 for $64,333.55, with a current amount due of $61,116.86. Wubbens Electric, itself, submitted monthly payment applications to DSC in those same months. DSC used information from Wubbens Electric and its other subcontractors and suppliers to prepare DSC's pay applications to the County Board. DSC verified the accuracy of the mathematical calculations and the percentage of work claimed as completed in Wubbens Electric's pay applications. However, Accurate contends that it was never paid for either the December 2007 or January 2008 pay applications, even though the parties agree that its work on the Jail Project was complete and satisfactory. The parties also agree that Wubbens Electric ceased operations in 2008 and is now defunct.

## 3.    *Certifications of acceptance of the project*

On March 11, 2008, the Chairman of the County Board signed a "Certificate Of Substantial Completion," which stated, in pertinent part, "The Owner accepts the Work or designated portion thereof as substantially complete and will assume full possession thereof at 8:00 AM February 14, 2008." Plaintiff's Appendix at 270. The parties agree that this Certificate accepted the Jail Project except for mechanical systems. The parties also agree that, on May 6, 2008, the County Board approved the final change order submitted by DSC. Furthermore, the parties agree that the County Board released the retainage except for an amount related to the mechanical systems on May 27, 2008. Finally, on November 3, 2008, the County Board passed a resolution entitled "a resolution accepting the law enforcement center project and releasing final retainage."

5

## B. Procedural Background

### 1.    Accurate's first lawsuit

On April 18, 2008, thirty-eight days after the Chairman of the County Board signed the "Certificate Of Substantial Completion" on March 11, 2008, Accurate filed the first Complaint in these actions initiating Case No. C 08-3021-MWB. That Complaint invoked this federal court's diversity jurisdiction, named the County Board, DSC, and Merchants as defendants, and asserted a claim for non-payment pursuant to IOWA CODE CH. 573 seeking judgment against the defendants on the retainage and Chapter 573 Bond relating to the Jail Project in the amount of not less than $328,441.95, plus reasonable attorney fees as authorized by IOWA CODE § 573.21, costs, interest, and such other relief as the court determines to be appropriate. Defendants DSC and Merchants filed a joint Answer And Affirmative Defenses (docket no. 9) denying Accurate's claim on May 12, 2008, and defendant County Board filed a separate Answer And Affirmative Defenses (docket no. 10) on May 14, 2008.

### 2.    Accurate's second lawsuit

On July 3, 2008, thirty-seven days after the County Board released the retainage except for an amount related to the mechanical systems on May 27, 2008, Accurate filed its second Complaint in these actions initiating Case No. C 08-3035-MWB, naming the same defendants, making essentially the same allegations, and asserting the same claim. However, in this second Complaint, Accurate asserted that it was filing the second action "to perfect its Iowa Code chapter 573 claim" in the absence of a stipulation that its Complaint in Case No. C 08-3021-MWB was timely and in fear that the defendants would assert that either May 6, 2008, or May 27, 2008, was the final acceptance date that triggered the time for the filing of a Chapter 573 claim. The County Board filed an Answer And Affirmative Defenses (docket no. 5) in that case on July 21, 2008. Before

the other defendants answered, however, the court entered an Order (docket no. 8 in Case No. C 08-3035-MWB, and docket no. 13 in Case No. C 08-3021-MWB) on August 11, 2008, consolidating Accurate's two actions with Case No. C 08-3021-MWB as the lead case in which all filings were to be made. All defendants then filed a joint First Amended And Substituted Answer And Affirmative Defenses (docket no. 18) in Case No. C 08-3021-MWB responding to the allegations of the Complaint actually filed in Case No. C 08-3035-MWB.

### 3. *Accurate's third lawsuit*

On January 2, 2009, sixty days after the County Board passed a resolution entitled "a resolution accepting the law enforcement center project and releasing final retainage" on November 3, 2008, Accurate filed its third Complaint in these actions initiating Case No. C 09-3001-MWB, naming the same defendants, making essentially the same allegations, and asserting the same claim. Although Accurate made no allegations explaining why it was filing the third action, it did allege that it "filed a Complaint after the expiration of thirty days and no later than sixty days following the completion and final acceptance of the Project," apparently running the days from the date of the County Board's November 3, 2008, resolution. All three defendants filed a joint Answer And Affirmative Defenses (docket no. 4) in that action on January 9, 2009. On January 29, 2009, the court entered an Order (docket no. 5 in Case No. C 09-3001-MWB and docket no. 23 in Case No. C 08-3021-MWB) consolidating Accurate's third action with its previous two, again with Case No. C 08-3021-MWB as the lead case in which all further filings were to be made, although all filings were to show all three case numbers in the caption.

A bench trial in the consolidated actions is scheduled to begin on or during the two-week period beginning July 6, 2009.

### 4. *The cross-motions for summary judgment*

On February 12, 2009, the defendants filed a Motion For Summary Judgment (docket no. 27), asserting the following grounds: (1) that Accurate has failed to comply with IOWA CODE § 573.16's filing requirements and statute of limitations, so that the entire case should be dismissed; (2) that IOWA CODE § 573.16 deprives this court of the ability to grant Accurate's requested relief and/or deprives this court of subject matter jurisdiction, so that the entire case should be dismissed; (3) that Accurate failed to comply with IOWA CODE § 573.15's notice requirements, so that its claim for payment for materials is barred; and (4) that the County Board has properly paid to DSC all retainage that it was holding under IOWA CODE CH. 573, so that the County Board is no longer a proper party. Accurate filed a Resistance (docket no. 37) on March 6, 2009, and the defendants filed a Reply (docket no. 42) on March 16, 2009. Accurate filed a Second Supplemental Response To Defendants' Statement Of Material Facts (docket no. 47) on March 27, 2009. The defendants filed an Objection To Use Of Affidavit Of Jason Loewe (docket no. 48), challenging Accurate's use of the affidavit in question, which was attached to Accurate's Second Supplemental Response To Defendants' Statement Of Material Facts (docket no. 47).

On February 12, 2009, Accurate also filed a Motion For Summary Judgment (docket no. 29), asserting that there were no genuine issues of material fact that would preclude summary judgment on its Chapter 573 claim and asserting, more specifically, (1) that it timely filed a claim under IOWA CODE § 573.7 and timely filed the instant civil actions in this court; (2) that Iowa law provides that it may recover its unpaid contract price; and (3) that it was not a material supplier, so that it was not required to comply with the notice requirements of IOWA CODE § 573.15. The defendants filed a Resistance (docket no. 40) to Accurate's motion on March 9, 2009, and Accurate filed a Reply

(docket no. 44) in further support of its motion on March 16, 2009. On March 17, 2009, the defendants filed a Supplemental Statement Of Additional Facts In Support Of Their Resistance To Plaintiff's Motion For Summary Judgment (docket no. 46), to which Accurate responded with its Second Supplemental Response To Defendants' Statement Of Material Facts (docket no. 47).

On May 14, 2009, the defendants filed a Supplement To Their Statement Of Facts And Responses To Statement Of Facts In Respect To Pending Motions For Summary Judgment (docket no. 66). On May 28, 2009, the defendants also filed a Notice Of New Authority In Respect To Pending Motions For Summary Judgment (docket no. 67). On June 15, 2009, however, the defendants filed a Withdrawal of Their Supplement To Their Statement Of Facts And Responses To Statement Of Facts In Respect To Pending Motions For Summary Judgment (docket no. 73).

The parties requested oral arguments on their cross-motions for summary judgment, but the court's crowded schedule and the short time now remaining until the scheduled bench trial have not allowed the timely scheduling of oral arguments. Therefore, the cross-motions for summary judgment are deemed fully submitted on the parties' written submissions.[1]

---

[1]While the cross-motions for summary judgment by the original parties were pending, by Order (docket no. 57) dated May 1, 2009, a magistrate judge of this court granted the April 28, 2009, Motion For Permission To Amend Pleadings To Add Counterclaim And Third-Party Complaint (docket no. 51) by defendant County Board and so-called "third-party plaintiff" Kevin Pals, in his capacity as Sheriff of Cerro Gordo County. The claims asserted by the County Board and Sheriff Pals are for "breach of warranties," "fraudulent misrepresentation," "fraudulent nondisclosure," "equitable fraud," "civil extortion," and "breach of implied covenant of good faith and fair dealing" against Accurate. *See* Counterclaim And Third-Party Complaint (docket no. 58). In an

(continued…)

Order (docket no. 71) filed June 9, 2009, that was otherwise directed to other matters, this court construed the Motion To Amend Pleadings as a motion to intervene by Sheriff Pals pursuant to Rule 24 of the Federal Rules of Civil Procedure and a motion to file a counterclaim by defendant County Board. In the same order, the court construed the magistrate judge's order granting Sheriff Pals's motion to assert "third-party claims" as an order granting leave to intervene pursuant to Rule 24(b) and modified that order accordingly pursuant to Rule 72(a). Therefore, the court restyled the case caption as shown in this ruling.

      Also while the cross-motions for summary judgment were pending, Accurate filed on June 8, 2009, a Motion To Dismiss (docket no. 69) seeking dismissal of the claims by the County Board and Sheriff Pals on Rule 12(b)(6) and Rule 12(b)(7) grounds. The court entered an Order (docket no. 72) on June 10, 2009, setting expedited deadlines for disposition of that motion prior to the scheduled trial. However, pursuant to the June 15, 2009, Unresisted Motion To Sever, Stay, And Continue The Counterclaim And Intervenor Claim (docket no. 74) filed by counterclaimant County Board and intervenor Sheriff Pals, and Accurate's June 15, 2009, Motion To Withdraw Motion To Dismiss (docket no. 76), the court entered an Order (docket no. 78) on June 16, 2009, severing, staying, and continuing the counterclaim and intervenor claim pending any party's request for resumption of such claim or other action terminating the parties' June 15, 2009, stipulation; allowing Accurate to withdraw, without prejudice, its motion to dismiss those claims; and suspending the deadlines pertaining to Accurate's motion to dismiss those claims.

      The amended pleading, now styled a Counterclaim And Intervenor's Claim (docket no. 58), was filed on May 4, 2009, at the same time that the County Board and Sheriff Pals filed a Motion For Temporary Restraining Order and Preliminary Injunction (docket no. 59) seeking an order requiring Accurate to immediately provide and install permanent operating licenses and to provide any other necessary work, service, or materials needed to satisfactorily and permanently resolve the licensing dispute between those parties and such other equitable relief as the court determined to be appropriate. The court issued an *Ex Parte* Order Regarding Third-Party Plaintiff's And Counterclaimant's Motion For Temporary Restraining Order And Preliminary Injunction (docket no. 61) on May 5, 2009, requiring Accurate to immediately provide and install *temporary* operating licenses necessary for operation of the Cerro Gordo County Jail's electronic security system during

(continued…)

### 5. *The proposal to certify questions*

Upon its review of the record in this matter and the parties' cross-motions for summary judgment, the court determined that it should consider whether or not certain questions raised in the parties' motions for summary judgment should be certified to the Iowa Supreme Court pursuant to N.D. IA. L.R. 83 and IOWA CODE § 684A.1. *See* N.D. IA. L.R. 83 (providing that a party may move to certify to the state Supreme Court or the court may, on its motion, certify to the state Supreme Court a question of state law, if the question "may be determinative of a cause pending in this court and it appears there may be no controlling precedent in the decisions of the appellate courts of the state"); IOWA CODE § 684A.1 (authorizing the Iowa Supreme Court to answer questions of law certified to it by a federal court or an appellate court of another state, if the question "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state"). Therefore, by Order (docket no. 71) dated June 9, 2009, the court directed the parties to file by June 16, 2009, responses to the court's proposal to certify questions to the Iowa Supreme Court stating their positions on whether or not to certify any question or questions to the Iowa Supreme Court, and, without regard to whether they favored or opposed certification of any question or questions, their formulations of any question or questions to be certified.

---

[1](...continued)
the pendency of the Temporary Restraining Order. Accurate filed a Notice Of Compliance With Temporary Restraining Order (docket no. 62) on May 7, 2009. After a telephonic hearing on May 11, 2009, the court indicated that no action will be taken regarding the Temporary Restraining Order unless the parties contact the court. Hearing Minutes (docket no. 63).

On June 16, 2009, the defendants filed their Notice Of Filing Response To Court's Proposal To Certify Questions (docket no. 77), objecting to certification of any questions, but, in the alternative, proposing modified versions of some of the court's proposed questions, and posing additional questions. Also on June 16, 2009, Accurate filed its Notice Of Filing Response To Court's Proposal To Certify Questions (docket no. 79), also objecting to certification of any questions, but also proposing alternative formulations of two of the questions proposed by the court.

Therefore, rather than certify questions to the Iowa Supreme Court over the parties' objections, this court will, in this memorandum opinion and order, resolve all of the questions presented in the cross-motions for summary judgment that it might otherwise have certified to the Iowa Supreme Court, resolving to the best of its ability questions on which this court believes that Iowa law is unsettled.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

As this court has noted on a number of occasions, motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. FED R. CIV. P. 56(a) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party") & (b) (allowing a defending party to move for summary judgment "at any time"). Summary

12

judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, summary judgement is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996).

## B. The Cross-Motions For Summary Judgment

Because there is some overlap of the issues in the parties' cross-motions for summary judgment, the court finds it appropriate to address the issues topically, rather than to address each motion in turn. Where there is such overlap of the issues in the motions, the court's summary of the parties' arguments will take into account arguments made in support of or resistance to both pending motions.

### 1. Subject matter jurisdiction

Logically, the first issue that the court must address is the defendants' challenge to this court's subject matter jurisdiction to hear Accurate's IOWA CODE CH. 573 claim at all. This is so, because federal courts are courts of limited jurisdiction and must assure themselves that they have subject matter jurisdiction over claims before them at all stages of the proceedings, even if the parties do not raise the question of subject matter jurisdiction themselves. *See Crawford v. F. Hoffman-La Roche, Ltd.*, 267 F.3d 760, 764

n.2 (8th Cir. 2001) ("[F]ederal courts are obligated to raise the issue of subject-matter jurisdiction *sua sponte.*") (citing *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 608 n. 6, 98 S. Ct. 2002, 56 L. Ed. 2d 570 (1978)); *see also Morris v. Winnebago Indus., Inc.*, 936 F. Supp. 1509, 1530 n.8 (N.D. Iowa 1996); *McCorkindale v. American Home Assur. Co.*, 909 F. Supp. 646, 649 n. 4 (N.D. Iowa 1995); *Laird v. Ramirez*, 884 F. Supp. 1265, 1269-70 (N.D. Iowa 1995).

### a.    *Arguments of the parties*

The defendants assert that IOWA CODE § 573.16 states that the court in the county where the public improvement is located is the exclusive source from which any remedy can be given under IOWA CODE CH. 573, so that the statute deprives this federal court of subject matter jurisdiction. The defendants acknowledge that the Eighth Circuit Court of Appeals may have rejected this subject matter jurisdiction argument in *Cincinnati Indem. Co v. A&K Constr. Co.*, 542 F.3d 623 (8th Cir. 2008), but they nevertheless assert it to preserve the issue for appeal, because there is a split in authority among the federal Circuit Courts of Appeals on the issue. They argue that federal courts addressing similar jurisdictional issues in workers' compensation cases have dismissed or abstained from hearing such cases, or determined that they could grant no remedy, because state law vested other tribunals with the exclusive power to grant the requested relief.

Accurate argues that the restriction on the county in which an action pursuant to IOWA CODE CH. 573 can be brought in IOWA CODE § 573.16 has no application to a federal court. Accurate argues that a state statute simply cannot deprive a federal court of diversity subject matter jurisdiction that the federal court may otherwise properly exercise pursuant to 28 U.S.C. § 1332. Instead, Accurate asserts that federal courts look to the federal venue statutes to determine where a diversity action may be heard, and need not follow a contrary state venue statute. Accurate also argues that an IOWA CODE CH. 573

action is a "transitory" action, not a "local" action involving real property, so that it need not be brought in the county where the property is located. Finally, Accurate argues that, if IOWA CODE § 573.16's restriction on the county in which the action can be brought is applicable, the proper remedy is for the court to transfer this action to Iowa District Court.

In reply, in an argument not entirely consistent with their lack of subject matter jurisdiction argument in their opening brief, the defendants argue that they are not asserting that IOWA CODE CH. 573 actions can only be brought in state court, but that this federal court is not located in Cerro Gordo County; they assert that if the public improvement in question were located in Woodbury County or Linn County, where this federal court has courthouses, Accurate's action could proceed in federal court. The defendants also argue that Accurate agreed to the requirements of IOWA CODE CH. 573, including its requirement that any lawsuit be brought in the "county where the improvement is located," by entering into a contract pursuant to or referencing IOWA CODE CH. 573.

### b.    Analysis

The statutory provision on which the defendants' subject matter jurisdiction argument relies provides as follows, with the part pertinent here highlighted:

> The public corporation, the principal contractor, any claimant for labor or material who has filed a claim, or the surety on any bond given for the performance of the contract, may, at any time after the expiration of thirty days, and not later than sixty days, following the completion and final acceptance of said improvement, *bring action in equity in the county where the improvement is located* to adjudicate all rights to said fund, or to enforce liability on said bond.

IOWA CODE § 573.16 (emphasis added). Thus, by its plain terms, the statute lays *venue* for an IOWA CODE CH. 573 action in a particular county; it says nothing about the state

courts or any particular state court having exclusive jurisdiction over IOWA CODE CH. 573 actions or providing the exclusive remedy for such actions. The question is whether this state venue statute also deprives a federal court of diversity subject matter jurisdiction.

More than a century ago, the United States Supreme Court rejected the notion that a state legislature can insulate a county from federal jurisdiction by providing that the county could only be sued in county courts. *See Chicot County v. Sherwood*, 148 U.S. 529, 533-34 (1893); *see also Cowles v. Mercer County*, 74 U.S. 118, 122 (1868); *Penn General Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 197 (1935) ("The jurisdiction conferred on the District Courts by the Constitution and laws of the United States cannot be affected by state legislation."). Since that time, various courts have rejected the notion that a state venue statute, laying venue for certain actions only in a certain county, or even a state statute granting state courts exclusive jurisdiction over certain actions, could deprive a federal court of diversity subject matter jurisdiction that would otherwise be proper.

Specifically, the Eighth Circuit Court of Appeals held some thirty years ago that a Nebraska statute placing exclusive jurisdiction in county courts over tort claims against Nebraska decedents did not act as a restriction or abrogation of a federal court's diversity jurisdiction over such claims. *Greyhound Lines, Inc. v. Lexington State Bank and Trust Co.*, 604 F.2d 1151, 1154-55 (8th Cir. 1979). The court held that the only requirements for federal diversity jurisdiction are those stated in 28 U.S.C. § 1332(a). *Id.* at 1155. More recently, the Eighth Circuit Court of Appeals has held that a state statute giving a certain state tribunal exclusive jurisdiction, at least in the first instance, does not deprive the federal courts of diversity jurisdiction over declaratory actions, although it may be appropriate for the federal court to stay or abstain in the federal action while a parallel state action is pending. *See Cincinnati Indem. Co. v. A & K Constr. Co.*, 542 F.3d 623,

624-25 (8th Cir. 2008) (dismissal of federal declaratory action concerning workers compensation coverage was not appropriate, because the federal court did not lack subject matter jurisdiction, and could try an original action concerning a state workers compensation claim, if the requisites of diversity jurisdiction were met, but the court should have abstained from exercising jurisdiction in a declaratory case where a parallel state lawsuit was pending).

Similarly, the Fourth Circuit Court of Appeals recognized some time ago that "a state venue statute can have no application to courts of the United States," because federal venue depends on the federal venue statute, and "[a] statute limiting the right to entertain the suit [only in a certain state court] no more ousts the jurisdiction of the federal court than does a statute limiting the right to entertain a suit against a municipal corporation to a designated court of the county in which the corporation is situated." *Popp v. Archbell*, 203 F.2d 287, 288-90 (4th Cir. 1953) (also explaining that such a state statute is "intended to regulate procedure and practice in the courts of the state" and is "not intended to limit, as indeed it could not limit, the jurisdiction of courts of the United States"); *see also Miller v. Davis*, 507 F.2d 308, 316 (6th Cir. 1974) ("State law does not control the venue of federal courts."); *Missouri Pac. R. Co. v. 55 Acres of Land Located In Crittenden County, Ark.*, 947 F. Supp. 1301, 1308-09 (E.D. Ark. 1996) (a state statute requiring a condemning party to file suit in the circuit court in the county in which the land is located is merely a venue statute that cannot defeat diversity jurisdiction in federal court, citing, *inter alia*, *Greyhound Lines*). To put it another way, where a "transitory" action, such as this one, not involving real property, is in federal court solely on the basis of diversity jurisdiction, venue is determined by the federal venue statute, 28 U.S.C. § 1391(a), "and

State venue statutes are not applicable." *Cobb v. National Lead Co.*, 215 F. Supp. 48, 51 (D.C. Ark. 1963).[2]

Moreover, the Tenth Circuit Court of Appeals held more than half a century ago that a federal court in a district that encompasses the county in which a state venue statute would lay venue is a court in that county, and venue in the federal court is thus proper. *Erwin v. Barrow*, 217 F.2d 522, 525 (10th Cir. 1954) (recognizing that state statutes providing that suits concerning recovery of real estate and suits involving land in more than one county "must be brought in the county in which the subject of the action is situated" were statutes that "relate to venue and not to jurisdiction," in that "[t]hey are concerned with the place of the maintenance of the suit, not the jurisdiction of the court to entertain them," and noting that a federal court "is merely another court of the state where it sits," so that a federal court in a district that included the counties in which the state statute would lay venue was a proper court to hear the action); *accord Arrington Dev., L.L.C., v. Alonto*, 2009 WL 257037, *1 (D. Utah Feb. 3, 2009) (slip op.) (rejecting the argument that a Utah statute that requires a mechanic's lien enforcement action to be filed in the county where the property is located established that the state court could provide the exclusive remedy, depriving the federal court of diversity jurisdiction, noting

_____

[2]The court in *Cobb* recognized that the rule is different for "local actions," that is, actions in rem or quasi in rem, involving real property, which must be brought within the jurisdiction where the res, the land, or at least some part of it, is physically located. *Cobb*, 215 F. Supp. 51-52. The defendants contend that this action is a "local action," because the "res" is the retainage under IOWA CODE CH. 573. The "res" in this action, the court finds, is either the retainage or the bond, but either is a sum of money, not particular dollars, and neither is necessarily physically located only in Cerro Gordo County, as real property would be. The part of the Supreme Court's decision in *Central Virginia Community College v. Katz*, 546 U.S. 356, 372 n.10 (2006), on which the defendants rely, is not to the contrary.

that venue in the federal court was proper pursuant to 28 U.S.C. § 1391(a), that the federal judicial district encompassed the county in which the state statute would lay venue, and that the defendant had provided no authority that indicated that a state venue statute trumps a federal venue statute).

The defendants' revised argument, in their reply brief, that the federal court can exercise jurisdiction under the Iowa statute only if the federal courthouse is located in the county specified in the state statute, and thus, the state statute does not attempt to deprive the federal courts of jurisdiction, is untimely. The court does not have to consider the defendants' revised argument at all, because it is a substantially different argument raised for the first time in the defendants' reply brief. *See Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 255 F.R.D. 645, 650 n.1 (N.D. Iowa 2009) (neither this court nor the Eighth Circuit Court of Appeals will ordinarily consider an argument raised for the first time in a reply brief). Nevertheless, if that argument had been timely asserted, it might stand on better ground if the selection of the forum in a particular county were in a contractual forum selection clause rather than in a state venue statute. *See Alliance Health Group, L.L.C. v. Bridging Health Options, L.L.C.*, 553 F.3d 397, 399-400 (5th Cir. 2008) (a contractual forum selection clause providing that "exclusive venue for any litigation related hereto shall occur in Harrison County, Mississippi," limited the available forum to the state court or a federal court *sitting* in the specified county, and did not include the federal court in a district that merely *encompassed* that county). However, the court rejects the defendants' argument that, simply by entering into a contract pursuant to or referencing IOWA CODE CH. 573, Accurate somehow explicitly or implicitly agreed that a court sitting in Cerro Gordo County could provide the exclusive remedy in this case. The court sees no reason why merely referencing in an agreement a statute that does not have the effect the defendants desire would give the supposed implicit agreement to the

terms of the statute greater effect than the statute could have by itself. Again, the situation might be different if the parties explicitly agreed to an "exclusive venue" clause in their agreement, but they did not do so here.

That part of the defendants' motion for summary judgment asserting that this court lacks subject matter jurisdiction, or that the Iowa District Court of Cerro Gordo County can provide the exclusive remedy on Accurate's IOWA CODE CH. 573 claim, will be denied.

### 2. *Timeliness*

#### a. *Arguments of the parties*

As a companion to their contention that IOWA CODE § 573.16 deprives this court of subject matter jurisdiction, the defendants argue in their motion for summary judgment that § 573.16 also makes Accurate's various actions untimely. They contend that § 573.16 is a "special statute of limitations" that the Iowa courts have strictly enforced and that this federal court is bound to follow. The defendants contend that, because Accurate did not file any action in a state court in Cerro Gordo County within the 30-day time frame imposed by § 573.16, Accurate has not and cannot now file a timely action. They contend that, if Accurate wished to pursue its action in federal court, Accurate could have filed a timely action in the Iowa District Court for Cerro Gordo County, then asked that the state action be stayed in light of the pending federal action. The defendants assert that such parallel filings are common in the arbitration context to preserve a mechanic's lien claimant's rights.

In its cross-motion for summary judgment, Accurate raises a somewhat different "timeliness" argument, arguing that § 573.16 requires a claimant to file suit "at any time after the expiration of thirty days, and not later than sixty days, following the completion and final acceptance of said improvement." Accurate argues that its first and second

lawsuits were "protective" filings, to ensure timeliness, but that final acceptance of the Jail Project ultimately occurred on November 3, 2008; thus, Accurate contends that its third suit was timely filed on January 2, 2009, sixty days later.

### b. Analysis

Iowa Code § 573.16 includes a timeliness requirement, highlighted in the following quotation, as well as the venue requirement previously discussed:

> The public corporation, the principal contractor, any claimant for labor or material who has filed a claim, or the surety on any bond given for the performance of the contract, *may, at any time after the expiration of thirty days, and not later than sixty days, following the completion and final acceptance of said improvement,* bring action in equity in the county where the improvement is located to adjudicate all rights to said fund, or to enforce liability on said bond.

Iowa Code § 573.16 (emphasis added). Thus, the statute provides a 30-day "window" for the filing of an action on a Chapter 573 claim, opening thirty days after the "completion and final acceptance of said project," and closing sixty days after that "completion and final acceptance" date.

The defendants do not make the "timeliness" argument that Accurate apparently feared, that none of the three actions Accurate filed was timely in relation to the completion and final acceptance of the Jail Project improvement. Rather, in both their own motion for summary judgment and in their resistance to Accurate's motion for summary judgment, the defendants argue that no timely action was filed *in an appropriate court* in Cerro Gordo County. Moreover, the court finds that any argument by the defendants that Accurate's action, if filed in the right court, was untimely under Iowa Code § 573.16 would be foreclosed by the defendants' affirmative assertions that, "for purposes of this case, completion and final acceptance of the project occurred on March 11, 2008," and

that "under any scenario, completion and final acceptance occurred no later than November 3, 2008." Defendants' Response To Plaintiff's Statement Of Facts In Support Of Their Resistance To Plaintiff's Motion For Summary Judgment (docket no. 40-3), ¶ 59. The defendants do not dispute that Accurate's Complaint in Case No. C 08-3021-MWB was filed on April 18, 2008, thirty-eight days after the March 11, 2008, "completion and final acceptance" date that they acknowledge and advocate. Nor do they dispute that Accurate's Complaint in Case No. C 09-3001-MWB was filed on January 2, 2009, sixty days after the November 3, 2008, date that they concede is the last date for "completion and final acceptance."

The "timeliness" argument that the defendants actually make—that no timely action was filed *in the right court*—also fails in light of the court's conclusion, above, that Accurate filed its Complaints in the right court. Thus, the court finds that at least one of Accurate's Complaints was timely; the court need not determine which one until and unless the parties demonstrate that the determination of a substantive issue turns on which date is, as a matter of law, the "completion and final acceptance" date of the Jail Project.

Therefore, that part of Accurate's motion for summary judgment asserting that its federal action is timely will be granted, and that part of the defendants' motion for summary judgment asserting that no timely action was filed in the correct court will be denied.

### 3. *Section 573.15's requirements*

Both parties have moved for summary judgment on whether or not IOWA CODE § 573.15's "material supplier's exception"—which bars a Chapter 573 claim "for material furnished" to a subcontractor, unless certain requirements for notice to a general contractor were met—bars Accurate's claims in this case. The defendants assert that the provision is applicable and that there is no genuine issue of material fact that its "notice"

requirements were not met. Accurate asserts that the provision is simply inapplicable. The court will begin with the "applicability" issue, then turn to other arguments concerning the effect of the provision here, if the court finds that it is applicable.

### a. *Applicability*

*i.* ***Arguments of the parties***. The defendants assert that § 573.15 does not state that it applies only to those who supply materials, but to "claims for material furnished." The defendants contend that, because Accurate furnished materials, even if it also supplied labor, the provision applies to Accurate, or at least to that part of Accurate's claim for materials. The defendants argue that the Iowa legislature knew how to draft statutory language that applies only to those who only furnish material, because in IOWA CODE § 573.7, the legislature carved out an exception—for persons "furnishing only materials to a subcontractor who is furnishing only materials"—from a provision otherwise applicable to persons "who performed labor, or furnished material, service, or transportation, in the construction of a public improvement." The defendants also point out that, in *Lumberman's Wholesale Co. v. Ohio Farmers Ins. Co.*, 402 N.W.2d 413, 415 (Iowa 1987), the court stated that failure to require "subcontractors and material suppliers who do not have contracts with the general contractor . . . to comply with the notice requirement of section 573.15 would serve to extend liability of the general contractor beyond that established by either the statutory scheme or the contractor's contractual liability." The defendants argue that this statement indicates that both subcontractors and material suppliers are subject to § 573.15's notice requirements with respect to any claims for material, where a "subcontractor" is one who furnishes labor and material.

In resistance to the defendants' motion for summary judgment and in support of its own motion for summary judgment, Accurate argues that, while other provisions of Chapter 573 must be construed liberally, § 573.15, as an exception, must be construed

narrowly, meaning that it should not be interpreted in a way that imposed limitations that are not apparent in the plain language of § 573.15. Accurate contends that none of the three principal cases interpreting § 573.15, including *Lumberman's Wholesale Co.*, on which the defendants rely, actually involved a person who provided labor as well as material. Accurate argues that, in *Lumberman's Wholesale Co.*, the Iowa Supreme Court nevertheless distinguished between a subcontractor and a material supplier, then held that material suppliers must comply with § 573.15, thereby indicating, at least in *dicta*, that subcontractors need not comply with the notice requirements of § 573.15. Accurate also argues that the defendants misread *Lumberman's Wholesale Co.*, which Accurate reads to limit the discussion of the negative effects of failure to require notice to the general contractor as relating only to material suppliers, not to subcontractors who also provide labor. Accurate argues that the notice requirement of § 573.15 would be redundant in the case of a subcontractor (or sub-subcontractor) that also performs labor, because the general contractor is aware of the presence of the subcontractor on the site, but may have no knowledge of the identity of a material supplier to a subcontractor. Accurate also points out that, in a fourth—and earlier—case not cited by the defendants, *First Federal State Bank v. Town of Malvern*, 270 N.W.2d 818, 822 (Iowa 1978), the Iowa Supreme Court expressly held that § 573.15 "refers only to the claims of materialmen."

Accurate also argues that § 573.15 applies only to "claims for material furnished," while § 573.6 identifies the types of claims as "all just claims due [to claimants] for labor performed and materials furnished," and § 573.7 applies to "the claim for such labor, or material, service, or transportation." Thus, Accurate argues that, unlike the other two provisions, § 573.15 is limited to claims for materials and, hence, Accurate's reasoning apparently runs, is limited to claims by entities that only furnish materials. Accurate argues that an amendment to § 573.7 in 1983, which added the second paragraph

pertaining to "[a] person furnishing only materials to a subcontractor who is furnishing only materials," was not intended to and never affected § 573.15, and that no simultaneous amendment to § 573.15 was necessary, because § 573.15 had already been construed to apply only to claims of material suppliers.

In support of its own motion for summary judgment, Accurate adds an alternative argument that DSC did order materials for Division 17 work, so that § 573.15 is inapplicable to its claim for material furnished. Accurate argues that this is so, because DSC required Wubbens Electric to hire Accurate in its subcontract with Wubbens Electric and incorporated Accurate's quote to Wubbens Electric by reference in that subcontract. Accurate also asserts that DSC knew that Division 17 included both labor and material, knew that Accurate was performing Division 17 work, and observed Accurate's employees on the site performing labor and furnishing material.

In resistance to Accurate's alternative argument that DSC ordered materials furnished by Accurate, the defendants assert that Accurate's argument is illogical, without factual support, and, if accepted, would render § 573.15 meaningless. The defendants assert that "order," as in "ordered materials," is used in the statute in a specific sense, not in a general or colloquial one, and that the statute requires specific forms of notice, not merely "notice" from observation of a subcontractor providing materials.

*ii.* *Analysis*. This court's determination of whether or not § 573.15 is applicable here depends, in large part, on the proper interpretation of that provision. This court recently summarized Iowa's rules of statutory interpretation, as follows:

> As the Iowa Supreme Court has recently explained,
> > When confronted with the task of determining the meaning of a statute, we have stated:
> > > The goal of statutory construction is to determine legislative intent. We determine legislative

> intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute.

*Auen v. Alcoholic Beverages Div.,* 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted). The interpretation of a statute requires an assessment of the statute in its entirety, not just isolated words or phrases. *State v. Young,* 686 N.W.2d 182, 184-85 (Iowa 2004). Indeed, "we avoid interpreting a statute in such a way that portions of it become redundant or irrelevant." *T & K Roofing Co. v. Iowa Dep't of Educ.,* 593 N.W.2d 159, 162 (Iowa 1999) (citation omitted). We look for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results. *Harden v. State,* 434 N.W.2d 881, 884 (Iowa 1989).

*Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337-38 (Iowa 2008). Thus, the court's role is, first, to determine whether the meaning of the statute is plain, and if so, to give effect to that plain meaning. *See State v. Public Employment Relations Bd.*, 744 N.W.2d 357, 360-61 (Iowa 2008) ("When we interpret a statute, our primary goal is to ascertain the legislature's intent. *State Pub. Defender v. Iowa Dist. Ct.*, 663 N.W.2d 413, 415 (Iowa 2003). To determine the legislature's intent, we first examine the language of the statute. *Id.* 'If the statutory language is plain and the meaning clear, we do not search for legislative intent beyond the express terms of the statute.' *Horsman v. Wahl*, 551 N.W.2d 619, 620-21 (Iowa 1996)."); *Birchansky Real Estate, L.C. v. Iowa Dep't of Public Health*, 737 N.W.2d 134, 139 (Iowa 2007) ("'If the statute's language is clear and unambiguous, we apply a plain and rational meaning consistent with the

subject matter of the statute.'") (quoting *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*, 681 N.W.2d 596, 603 (Iowa 2004)).

*Farmers Coop. Co. v. Swift Pork Co.*, 602 F. Supp. 2d 1095, 1107-08 (N.D. Iowa 2009).

The provision this court must interpret here, IOWA CODE § 573.15, entitled "exception," with the language that the court must interpret first highlighted, provides as follows:

> No part of the unpaid fund due the contractor shall be retained as provided in this chapter *on claims for material furnished, other than materials ordered by the general contractor or the general contractor's authorized agent, unless* such claims are supported by a certified statement that the general contractor had been notified within thirty days after the materials are furnished or by itemized invoices rendered to contractor during the progress of the work, of the amount, kind, and value of the material furnished for use upon the said public improvement, and no part of such unpaid fund due the contractor shall be retained as provided in this chapter because of the commencement of any action by the contractor against the state department of transportation under authority granted in section 613.11.

IOWA CODE § 573.15 (emphasis added). The Iowa Supreme Court has observed that, at least as to other language in this provision, "the statutory language is not a model of clarity." *Lumberman's Wholesale Co. v. Ohio Farmers Ins. Co.*, 402 N.W.2d 413, 416 (Iowa 1987) (interpreting the "during the progress of the work" language). This court might make the same observation about the phrase "on claims for material furnished" in this statute.

Nevertheless, the court does not conclude that this language is necessarily ambiguous, nor is the court wholly without guidance from Iowa courts on the meaning of this language. The Iowa Supreme Court has interpreted language in § 573.15 on more

27

than one occasion, as well as other provisions of Chapter 573. In addition, the Iowa Supreme Court has noted, "In resolving questions under Iowa Code chapter 573, we have looked to the federal interpretation of the Miller Act, 40 U.S.C. sections 270(a)-(d) (1982), the federal counterpart of Iowa Code chapter 573." *Iowa Supply Co. v. Grooms & Co. Constr., Inc.*, 428 N.W.2d 662, 665 (Iowa 1988).[3] The Iowa Supreme Court has noted, however, that federal cases interpreting comparable provisions of the Miller Act are not binding as to the interpretation of the Iowa statute. *Id.*

Accurate asserts that the Iowa Supreme Court settled the precise question of the meaning of the language at issue here in *First Federal State Bank v. Town of Malvern*, 270 N.W.2d 818 (Iowa 1978). In *Town of Malvern*, the Iowa Supreme Court interpreted the meaning of the phrase "on claims for material furnished" also at issue here, as follows:

> Section 573.15, by the phrase just quoted, refers only to the claims of materialmen. The claims of materialmen (as well as laborers) were, of course, the subject with which *Sinclair [Refining Co. v. Burch*, 235 Iowa 594, 16 N.W.2d 359 (1944),] dealt. The section simply has no application to a dispute between the town and the contractor over progress payments which are earned before the contractor's default. Nothing in chapter 573 would apply to this dispute. This conclusion is not surprising, in light of chapter 573's title: Labor and Material on Public Improvements.

*Town of Malvern*, 270 N.W.2d at 822. Thus, *Town of Malvern* appeared to distinguish among "materialmen," "laborers," "the town," and "the contractor," and expressly stated that the phrase "on claims for material furnished" in § 573.15 "refers only to the claims of materialmen."

---

[3]The Miller Act is now codified at 40 U.S.C. § 3131 *et seq.*

The defendants contend, however, that *Town of Malvern* does not stand for the proposition that § 573.15 applies only to claims of materialmen, that it is not even a Chapter 573 case, and that, in any event, it has been overruled by subsequent case law. The defendants assert that the court in *Town of Malvern* found that "[n]othing in chapter 573 would apply to this dispute," so that, if there were no Chapter 573 claims at issue in the case, the question of whether § 573.15 applies only to materialmen was not before the court. Thus, in the defendants' view, *Town of Malvern* stands only for the "unremarkable" proposition that § 573.15 is inapplicable to disputes between owners and prime contractors over progress payments, and any other comments are merely *dicta*.

The Iowa Supreme Court has recognized that language is not *dicta* if it is "material, relevant, necessary, and essential to the . . . judgment" in question. *See Westendorf v. Wehling*, 611 N.W.2d 512, 514 (Iowa 2000). There can be little doubt that the determination of the scope of § 573.15—to what it did apply—was material, relevant, necessary, and essential to the Iowa Supreme Court's determination in *Town of Malvern* that the provision did *not* apply to a dispute between the town and the contractor over progress payments. Thus, contrary to the defendants' contentions, *Town of Malvern* does stand for the proposition that the phrase "on claims for material furnished" in § 573.15 "refers only to the claims of materialmen."

The defendants also assert that, even if the statement in *Town of Malvern* on which Accurate relies is not *dicta*, it has been overruled by the Iowa Supreme Court's later decision in *Lumberman's*. Accurate argues, to the contrary, that *Lumberman's* actually supports its reading of the statute as applicable only to the claims of material suppliers. Thus, this court must determine just what *Lumberman's* says.

The pertinent part of the *Lumberman's* decision, at least in the first instance, is the following:

Lumberman's urges that we recognized in *Cities Service Oil Co. v. Longerbone,* 232 Iowa 850, 6 N.W.2d 325 (1942), that, if at least one claim triggers a retainage of funds under chapter 573, other claimants can thereafter participate in a suit to recover against that retainage or the general contractor's surety, even though the other claimants did not file their claims within the statutory period or commence an action within the time provided by Iowa Code section 573.16 (1983). Lumberman's refers to this principle as "piggybacking."

Our review of the *Longerbone* decision suggests that the type of "piggybacking" which was permitted *should be limited to claims of persons or entities who have contracted directly with the general contractor.* As to such claims, it does not extend the general contractor's liability to permit claims against funds owed the general contractor which have been retained by the public corporation as a result of claims filed by other parties. The general contractor is liable for such claims in any event under general principles of contract law. The timely filing claimants are not prejudiced because they will receive any deficiency from the general contractor's surety.

*A different situation prevails, however, with respect to claims on behalf of subcontractors or material suppliers who do not have contracts with the general contractor. Failure to require the latter type of claimant to file timely claims or to comply with the notice requirement of section 573.15 would serve to extend the liability of the general contractor beyond that established by either the statutory scheme or the contractor's contractual liability.* We conclude the court of appeals was correct in holding that Lumberman's should not be permitted to join in a claim against the retainage generated by claims filed by Riverview Products, Inc. or Parkview Company.

*Lumberman's Wholesale Co.*, 402 N.W.2d at 415 (emphasis added).

Accurate reads this part of the decision, especially the italicized portion in the third quoted paragraph, as distinguishing between "subcontractors," on the one hand, and

"material suppliers who do not have contracts with the general contractor" on the other, and, thus, requiring § 573.15 notice only from "material suppliers" as necessary to protect general contractors, but not requiring such notice from "subcontractors." Accurate argues that, because it was a "subcontractor," that is, an entity that provided both labor and material, *Lumberman's* actually leaves it out of the set of entities that must provide § 573.15 notice. The defendants read the same language as identifying one group, "subcontractors or material suppliers who do not have contracts with the general contractor," as the kinds of entities who must provide § 573.15 notice to protect general contractors.

The court agrees with the defendants that "the latter type of claimant" in the third paragraph quoted above is a single group of claimants identified in the third paragraph as "subcontractors or material suppliers who do not have contracts with the general contractor," as distinguished from what would be the former type of claimant identified in the second paragraph quoted above as "persons or entities who have contracted directly with the general contractor." *Id.* Thus, *Lumberman's* holds that "persons or entities who have contracted directly with the general contractor" may "piggyback" their claims against the retainage onto the claims of any other such entities that made timely claims against the retainage, even if they did not file their claims within the statutory period or commence an action within the time provided by Iowa Code § 573.16, but "subcontractors or material suppliers who do not have contracts with the general contractor" may not "piggyback" their claims against the retainage onto timely claims of other entities against the retainage. *See id.*

It would require mental gymnastics too tortuous for the court to attempt to conclude that the determination of entities to which § 573.15 applies in *Lumberman's* is not as material, relevant, necessary, and essential to the Iowa Supreme Court's judgment in that

case as the determination of the entities to which § 573.15 applies in *Town of Malvern*, such that the determination in *Lumberman's* is merely *dicta*, but the determination in *Town of Malvern* is not. *See Westendorf*, 611 N.W.2d at 514 (a determination is not *dicta* if it is material, relevant, necessary, and essential to the court's judgment). It is, at best, lukewarm comfort to note, as Accurate does, that in *Lumberman's*, it was not necessary for the court to determine whether § 573.15 applies to "subcontractors," because the claimant in that case was only a supplier of materials to a subcontractor, not an entity that also or only provided labor, *i.e.*, what Accurate calls a "subcontractor." *See Lumberman's Wholesale Co.*, 402 N.W.2d at 414 (describing the claimant as "an unpaid supplier of building materials to a subcontractor on a public improvement project"). There was, after all, also no "subcontractor," and for that matter, no "material supplier," in *Town of Malvern*. *Town of Malvern*, 270 N.W.2d at 819 (describing the action as "a contest between the surety of a contractor who defaulted in the performance of a public construction project and the bank to which the contractor assigned its contract rights") & 822 (finding that § 573.15 "simply has no application to a dispute between the town and the contractor over progress payments").

The court is then left with the problem that the determination in *Lumberman's* that § 573.15 applies to "subcontractors . . . who do not have contracts with the general contractor," as well as to "material suppliers who do not have contracts with the general contractor," appears to conflict with the prior determination of the same court in *Town of Malvern* that § 573.15 applies only to "materialmen," apparently as distinguished from "laborers," "the town," and "the contractor." The decision in *Lumberman's* does not even mention its prior interpretation of the entities to which § 573.15 applies in *Town of Malvern* in its analysis of that question. *See Lumberman's Wholesale Co.*, 402 N.W.2d at 415. This omission seems particularly odd, where, in a later part of the decision in

*Lumberman's* interpreting the phrase "during the progress of the work," the Iowa Supreme Court dismissed the relevance of another case interpreting § 573.15, *Economy Forms Corp. v. City of Cedar Rapids*, 340 N.W.2d 259, 264 (Iowa 1983), asserted by one of the parties, on the ground that "[t]he issue of interpretation of section 573.15 presented in the present case was not before the court in *Economy Forms*," so that "the language utilized in referring to the statute in that case does not aid in the determination of its meaning in the present case." *Lumberman's Wholesale Co.*, 402 N.W.2d at 415-16. The omission becomes even more strange, considering the very small pool of cases even mentioning § 573.15 (or its predecessors). This court is reluctant to conclude that, in *Lumberman's*, the Iowa Supreme Court overruled *sub silentio* the interpretation of the pertinent part of § 573.15 in *Town of Malvern*.[4] Far more likely explanations would be that the court in *Lumberman's* simply overlooked its prior decision in *Town of Malvern* or did not perceive *Town of Malvern* to be contrary to its conclusion.

---

[4]It appears that the Iowa Supreme Court has overruled a prior decision *sub silentio* on only a handful of occasions. *See Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 842 n.3 (Iowa 2005) (noting, "It appears we overruled *Saylor [v. Parsons*, 122 Iowa 679, 98 N.W. 500 (1904),] in *Hollingsworth [v. Schminkey]*, 553 N.W.2d [591,] 598 [(Iowa 1996)]," and noting that *Saylor* and been "roundly criticized" by courts and commentators); *see also State v. Evans*, 495 N.W.2d 760, 767-68 (Iowa 1993) (Snell, J., dissenting) (dissenting "from the majority's Sixth Amendment analysis that overrules, sub silentio, our case of *State v. Johnson*, 318 N.W.2d 417 (Iowa 1982)"); *In re Marriage of Kouba*, 257 N.W.2d 35, 38 (Iowa 1977) (rejecting the petitioner's argument that the court had overruled *In re Estate of Roberts*, 257 Iowa 1, 131 N.W.2d 458 (1964), in a series of later cases, because the court found a decision consistent with it, *In re Marriage of Beeh*, 214 N.W.2d 170, 175 (Iowa 1974)); *State v. Reaves*, 254 N.W.2d 488, 502 (Iowa 1977) (McCormick, J., dissenting) (objecting to the majority's failure to state that it was overruling two prior cases and, if it was overruling those cases *sub silentio*, failing to explain whether they were overruled in their entirety or only in part).

This court concludes that the apparent conflict between *Town of Malvern* and *Lumberman's* disappears when the court considers that the decision in *Town of Malvern* does not identify any class of entities as "subcontractors," or otherwise distinguish an entity that furnished only "material" from an entity that furnished both "labor" and "material." *See Town of Malvern*, 270 N.W.2d at 822. For that matter, neither did the decision in *Sinclair*, which the decision in *Town of Malvern* cited as involving the claims of both "laborers" and "materialmen." *See Sinclair*, 16 N.W.2d 359. With that observation, the statement in *Town of Malvern* that § 573.15 "refers only to the claims of materialmen" is descriptive of the *claims* subject to § 573.15. Thus, "*claims* of materialmen" is only an imprecise paraphrase of the statutory language, which limits the applicability of § 573.15 to "*claims* for material furnished"—and more precisely, "*claims* for material furnished, other than materials ordered by the general contractor or the general contractor's authorized agent," as opposed to *claims* between a "town" and a "contractor." *Town of Malvern*, 270 N.W.2d at 822. If that is the proper reading of *Town of Malvern*, then that decision is not inconsistent with the conclusion in *Lumberman's* that "subcontractors or material suppliers who do not have contracts with the general contractor" must be required "to comply with the notice requirement of section 573.15" on their "*claims* for materials furnished" in order to avoid "extend[ing] the liability of the general contractor beyond that established by either the statutory scheme or the contractor's contractual liability." *Lumberman's Wholesale Co.*, 402 N.W.2d at 415. Nothing in *Lumberman's* says that § 573.15 applies to any portion of the claim of a "subcontractor" or "material supplier" that is for anything other than "material." *Id.* To the extent that *Lumberman's* focused on the *nature of the entities* whose claims were controlled by § 573.15, the focus was on whether the entities did or did not have contracts

with the general contractor, not on whether the entities only made claims for material rather than claims for both labor and material. *Id.*

More importantly, this reading of *Town of Malvern* as paraphrasing the statutory language concerning the nature of the *claims* controlled by § 573.15, rather than as determining that only one kind of entity, "materialmen," is required to comply with the statute, is also consistent with the plain meaning of the statute in question. *See Farmers Coop. Co.*, 602 F. Supp. 2d at 1107-08 (statutory interpretation under Iowa law begins, and may end, with the plain language of the statute). The statute is cast in terms of the *nature of the claims*, as "claims for material furnished," not in terms of the *nature of the entity making the claims*. Specifically, the statute states, "No part of the unpaid fund due the contractor shall be retained as provided in this chapter *on claims for material furnished*, other than materials ordered by the general contractor or the general contractor's authorized agent, unless *such claims* are supported by" timely and detailed notice to the general contractor. IOWA CODE § 573.15 (emphasis added). As the defendants argue, an entity that provides both labor and material for a public improvement may make a "claim for material furnished," just as it may also make a claim for labor furnished. *See* IOWA CODE § 573.6 (identifying the types of claims as "all just claims due [to claimants] for labor performed and materials furnished"); IOWA CODE § 573.7 (referring to "the claim for such labor, or material, service, or transportation"). Under the plain language of § 573.15, that provision's notice requirements would apply to the portion of any entity's claim that is a "claim for material furnished" (unless the materials were "ordered by the general contractor or the general contractor's authorized agent). To put it another way, under the plain language of the statute, the fact that an entity may have furnished both labor and material to a public improvement does not excuse that entity from compliance

35

with § 573.15's notice requirements for the portion of its claim that is for "material furnished."

This reading of the plain language of § 573.15 as applying to "claims for material furnished," whether or not the entities making the claims furnished *only* material, is consistent with other provisions of IOWA CODE CH. 573. Specifically, IOWA CODE § 573.6(1) requires that the bond for the performance of a contract for the construction of a public improvement include a term that the principal and sureties on the bond agree to pay "to all persons, firms, or corporations having contracts directly with the principal or with subcontractors, all just claims due them for labor performed or materials furnished," which clearly recognizes that an entity may make a claim for labor or a claim for materials furnished or perhaps even both kinds of claims. Similarly, IOWA CODE § 573.7 provides that any entity that has, "under a contract with the principal contractor or with subcontractors, performed labor, or furnished material, service, or transportation, in the construction of a public improvement, may file . . . an itemized, sworn, written statement of the claim for such labor, or material, service, or transportation." This provision, likewise, identifies various kinds of claims, that is, claims for labor, for material, for service, or for transportation. While these statutory provisions plainly suggest that there are different kinds of claims pursuant to Chapter 573, § 573.15 simply imposes specific notice requirements on one kind of claim—a "claim for material furnished," if the material was not "ordered by the general contractor or the general contractor's authorized agent." Moreover, Accurate's argument that a "subcontractor" cannot be an entity that furnishes only "material" and, hence, is not an entity to which § 573.15 applies, runs afoul of the language in § 573.7, which states, "A person furnishing only materials to a *subcontractor who is furnishing only materials* is not entitled to a claim against the retainage or bond under this chapter and is not an obligee or person protected under the bond pursuant to

section 573.6." (Emphasis added.)  Plainly, under this provision, a "subcontractor" can furnish "only materials."  The obvious conclusion is that status as a "subcontractor" in Chapter 573 relates to the contractual relationship between an entity and the general contractor, not to the nature of what the subcontractor furnishes to the public improvement.  Thus, Accurate asserts a false dichotomy between "subcontractors" and "materialmen" that is simply not in § 573.15 or, for that matter, anywhere else in Chapter 573.

In short, § 573.15 applies to a "claim for material furnished" by any entity—and only to the part of that entity's claim that is for "material furnished"—even if the entity also makes a claim for labor, or service, or transportation furnished to the public improvement project, if the material was not "ordered by the general contractor or the general contractor's authorized agent."

Accurate mounts an alternative argument that § 573.15 is inapplicable, because DSC, the general contractor, did order Division 17 material from Accurate within the meaning of IOWA CODE § 573.15, so that Accurate's claim for material furnished is excluded from the notice requirements of § 573.15.  Accurate argues that this is so, because the specifications for the Jail Project pre-approved certain electronic security system subcontractors, and DSC required assurances from Wubbens Electric that it would not only hire a pre-approved electronic systems sub-subcontractor, but that it would hire Accurate "for all Division 17 work," and DSC incorporated such a requirement in its subcontract with Wubbens Electric.  Accurate argues that, consequently, DSC ordered that Accurate Controls perform the Division 17 work by requiring that Wubbens Electric subcontract with Accurate Controls for that work.

The defendants argue that DSC did not "order" materials from Accurate within the meaning of § 573.15, because Accurate's argument is illogical, without factual support,

and, if accepted, would render § 573.15 meaningless. The defendants read the exception for material "ordered" by the general contractor or its agent to be applicable only if the claimant who furnished the materials did so under a contract with the prime contractor. The defendants also point out that the language inserted into the Wubbens Electric subcontract makes no mention of *material* for Division 17 work, only *work* under Division 17 to be performed by Accurate. Finally, the defendants argue that expanding the "order" exception beyond a contractual relationship between the claimant and the prime contractor would render § 573.15 meaningless, because *all* public construction projects in Iowa involve subcontracting, and under Accurate's interpretation, it could be argued that the owner and prime contractor "ordered" all of the labor and materials furnished and "approved" all workers and trades on the project. This is simply too loose a construction of "order," the defendants contend.

The court finds that the proper construction of "materials ordered by the general contractor or the general contractor's authorized agent" exception to § 573.15's notice requirements is readily apparent from both the plain meaning of the phrase and the interpretation of § 573.15 in *Lumberman's*. As to plain meaning, *see Farmers Coop. Co.*, 602 F. Supp. 2d at 1107-08 (statutory interpretation under Iowa law begins, and may end, with the plain language of the statute), the phrase "materials ordered by the general contractor or the general contractor's authorized agent" plainly contemplates some direct demand or request from the general contractor (or the general contractor's authorized agent) to the material supplier for the material in question. *See* OXFORD ENGLISH DICTIONARY (on-line ed. at http://dictionary. oed. com) (defining "order," *inter alia*, as "To make an order for; to give a verbal, written, or electronic request that (something) be made, supplied, or served"). Moreover, as noted above, in *Lumberman's*, the Iowa Supreme Court distinguished between "persons or entities who have contracted directly

with the general contractor" and "subcontractors or material suppliers who do not have contracts with the general contractor," finding that [f]ailure to require the latter type of claimant to file timely claims or to comply with the notice requirement of section 573.15 would serve to extend the liability of the general contractor beyond that established by either the statutory scheme or the contractor's contractual liability." *Lumberman's Wholesale Co.*, 402 N.W.2d at 415. Thus, under *Lumberman's*, an entity from whom the general contractor has "ordered" materials would be a person or entity that had contracted directly with the general contractor. Thus, this court concludes that "materials ordered by the general contractor or the general contractor's authorized agent" within the meaning of § 573.15 are materials obtained by a direct request of the general contractor (or its authorized agent) to the material supplier, for example, pursuant to a contract directly between the general contractor and the material supplier or a purchase order directly from the general contractor to the material supplier.

As the defendants suggest, Accurate's expanded meaning of "material ordered by the general contractor or the general contractor's authorized agent" to include materials ordered by a subcontractor, even pursuant to a requirement of the subcontractor's contract with the general contractor that a certain material supplier be used, is illogical, because it could make any "subcontract" with the general contractor an "order" by the general contractor for materials from the subcontractor's materials supplier, thus essentially rendering the language in question meaningless. *See Farmers Coop. Co.*, 602 F. Supp. 2d at 1107 ("'We look for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results.'" (quoting *Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337-38 (Iowa 2008), in turn citing *Harden v. State,* 434 N.W.2d 881, 884 (Iowa 1989)). Also as the defendants point out, even if a direction in a contract between a general contractor and a subcontractor that a subcontractor order materials from a certain

material supplier were sufficient to constitute "ordering" of the materials by the general contractor, the subcontract between DSC and Wubbens Electric specifies that Accurate be sub-subcontracted for Division 17 "work" on the Jail Project, not to supply "materials."

Accurate points to no other evidence that raises a genuine issue of material fact that DSC "ordered" any material from Accurate. Thus, Accurate does not, as a matter of law, fall within the exception to the requirements of § 573.15.

Consequently, that part of the defendants' motion asserting that § 573.15 is applicable to that part of Accurate's claim that is for "material furnished" must be granted, and that part of Accurate's motion for summary judgment asserting that § 573.15 is not applicable to any part of Accurate's claim must be denied.

### b.    *Satisfaction of § 573.15's requirements*

In their motion for summary judgment, the defendants assert that, not only is § 573.15 applicable to Accurate's claim, or at least that part of its claim for material furnished, but there is no genuine dispute that Accurate did not comply with § 573.15's specific notice requirements. Accurate asserts in its own motion and in resistance to the defendants' motion that there is no genuine dispute that it substantially complied with § 573.15's notice requirements, if those requirements are applicable to any part of Accurate's claim.

*i.    Arguments of the parties*.    The defendants argue that the language of § 573.15 and applicable case law make clear that the provision contains two alternatives for notice, a "30-day limitation" alternative and a "progress of the work" alternative that is not subject to the "30-day limitation." They also argue that case law makes clear that, under the "progress of the work" alternative, notice must be given prior to completion of the overall project; more specifically, that invoices furnished after completion of the portion of the project involving the claimant's materials but before completion of the

overall project is untimely under this alternative; and that the provision must be interpreted with the goal of providing meaningful protection to prime contractors beyond that provided by the time-period for filing claims under IOWA CODE § 573.10. They also contend that case law makes clear that invoices are timely furnished under the "progress of the work" alternative, if they are furnished prior to completion of the "subproject" on which any of the materials for which a claim is made were furnished. They also argue that the contents of the required notice are specifically stated and must be complied with to serve the purpose of the provision to protect the general contractor.

The defendants argue that, here, the first time that Accurate furnished any information about the materials portion of its claim was on or about November 12, 2008, in response to an interrogatory from the defendants in this litigation. They argue that this date is well past any deadline for notice in § 573.15. They argue that Accurate's last date for notice under the "progress of the work" option was January 17, 2008, the date that Wubbens Electric and/or Accurate finished their "subproject," and its last date for notice under the "30-day" option was February 16, 2008, based on thirty days after the date that Wubbens Electric was 100% finished with its work under the subcontract with DSC. The defendants assert that Accurate failed to provide the required notice by either date, so its claim for materials furnished is barred.

Accurate argues that DSC knew that Division 17 of the specifications included both labor and materials and knew that Accurate was performing Division 17 of the specifications. Accurate also argues that DSC's representatives observed Accurate on site performing labor and furnishing materials. Accurate also asserts that DSC had adequate notice of the amount, kind, and value of the materials furnished by Accurate from the specifications for Division 17 and the June 28, 2006, quote from Accurate to Wubbens

Electric. Thus, Accurate argues that it substantially complied with the notice requirements of § 573.15.

In the alternative or in addition, Accurate argues that the payment applications that Wubbens Electric provided monthly to DSC provided sufficient notice to DSC of Accurate's work and materials used. Accurate argues that, at a minimum, the monthly pay applications put DSC on notice that Accurate was furnishing materials to the project. Accurate argues that § 573.15 does not require that amounts due to the subcontractor and the sub-subcontractor be separated or that the amounts due for labor and materials be separated. Thus, Accurate again argues that the itemized invoices provided to DSC by Wubbens Electric during the progress of the work were sufficiently detailed for substantial compliance with § 573.15.

In response to Accurate's motion for summary judgment, the defendants argue that notice to DSC that Accurate would be furnishing labor and materials on the project is not sufficient to satisfy the specific requirements of § 573.15, which would be rendered meaningless if only ordinary circumstances of a construction project were sufficient to provide the requisite notice. The defendants also argue that information in the specifications is simply not the same as notice of a claim by a particular entity, not least because the information in the specification was provided before any entity provided any materials. The defendants also argue that Wubbens Electric's pay applications provided no adequate notice of how much *Accurate* was claiming for labor or materials. The defendants point out that, in a Miller Act case, the Eighth Circuit Court of Appeals rejected the notion that notice requirements were satisfied when a subcontractor forwarded the claimant's invoices to the prime contractor during the pay application process, citing *United States ex rel. American Radiator & Standard Sanitary Corp. v. Northwestern Engineering Co.*, 122 F.2d 600, 603 (8th Cir. 1941). The defendants also argue that,

contrary to Accurate's contentions, § 573.15 does require separation of labor and materials claims, because it expressly requires certain information about the materials claims.

  ***ii.***   ***Analysis***.   Again, IOWA CODE § 573.15, with the section now pertinent highlighted, provides as follows:

> No part of the unpaid fund due the contractor shall be retained as provided in this chapter on claims for material furnished, other than materials ordered by the general contractor or the general contractor's authorized agent, *unless such claims are supported by a certified statement that the general contractor had been notified within thirty days after the materials are furnished or by itemized invoices rendered to contractor during the progress of the work, of the amount, kind, and value of the material furnished for use upon the said public improvement*, and no part of such unpaid fund due the contractor shall be retained as provided in this chapter because of the commencement of any action by the contractor against the state department of transportation under authority granted in section 613.11.

IOWA CODE § 573.15 (emphasis added). The pertinent portion of the statute here includes the precise portion of language that the Iowa Supreme Court has described as "not a model of clarity." *Lumberman's Wholesale Co.*, 402 N.W.2d at 416 (interpreting the "during the progress of the work" language). Nevertheless, the court begins its examination of the pertinent portion of the statute with the few Iowa cases to discuss it, in chronological order, hoping to glean from them sufficient guidance to resolve the question of whether or not Accurate did or did not satisfy the provision's requirements as a matter of law.

  First, in *Economy Forms Corp. v. City of Cedar Rapids*, 340 N.W.2d 259 (Iowa 983), the Iowa Supreme Court rejected the general contractor's argument that the statute requires the furnishing of invoices within 30 days of the service covered by the invoice, instead finding that "the statute plainly provides for the invoices to be rendered to the

contractor 'during the progress of the work,' not limited to the 30 day provision."
*Economy Forms Corp.*, 340 N.W.2d at 264. Thus, the court held that "[i]t was not fatal
to plaintiff's claim that the certification was filed separately and that it did not aver the
furnishing of invoice copies within 30 days of the services." *Id.* Thus, *Economy Forms*
confirms what was reasonably apparent from the pertinent statutory language, that adequate
notice may be provided *either* "by [(1)] a certified statement that the general contractor had
been notified within thirty days after the materials are furnished *or* [(2)] by itemized
invoices rendered to contractor during the progress of the work." IOWA CODE § 573.15
(emphasis added).

The Iowa Supreme Court subsequently examined the "timeliness" requirement
under § 573.15 under the "the progress of the work" alternative in *Lumberman's
Wholesale Co.*, 402 N.W.2d at 415-16. The pertinent part of the *Lumberman's* decision
is as follows:

> Lumberman's [the claimant] urges that the statutory language
> requiring "itemized invoices rendered to a contractor during
> the progress of the work" should be interpreted as permitting
> the giving of notice via invoices at any time prior to final
> completion of the project by the general contractor. The
> district court and the court of appeals rejected that contention
> and concluded that the words "during the progress of the
> work" refer to progress of that portion of the work in which
> the materials for which claim is made are utilized. Under that
> interpretation, the notice given Miami [the general contractor]
> in February 1984 was untimely because the portion of the
> project involving Lumberman's materials was completed in
> December 1983.
>
> Although the statutory language is not a model of
> clarity, we believe that the court of appeals interpretation more
> nearly accords with the apparent purpose of the statute than the
> interpretation proposed by Lumberman's. If a claimant who

> furnishes materials during a project's early stages is permitted
> to await the completion of the entire project before giving
> notice under section 573.15, this would add little to the
> protection already afforded the general contractor by the
> statutory period for filing claims.

*Lumberman's Wholesale Co.*, 402 N.W.2d at 415-16 (also finding that *Economy Forms* addressed a different issue of interpretation, so that it was not an aid to the determination of the meaning of the statutory language at issue in this case). Thus, "during the progress of the work" means during the progress of "that portion of the work in which the materials for which claim is made are utilized," not simply during the progress of the entire project. *Id.*

A considerably more recent, but unpublished, decision of the Iowa Court of Appeals, *Marquart Block Co. v. Denis Della Vedova, Inc.*, 725 N.W.2d 658, 2006 WL 3018277 (Iowa Ct. App. 2006) (table op.), picks up where *Lumberman's* left off. In that case, the claimant, Marquart, provided materials for the masonry part of a project on which DDVI was the general contractor. *Marquart Block Co.*, 725 N.W.2d 658, 2006 WL 3018277 at *1. The part of the decision that is pertinent here is the following:

> The [district] court concluded [relying on *Lumberman's*] that
> notice was given [by Marquart to DDVI] during "that portion
> of the work in which materials for which claim is made are
> utilized" because "[t]he portion of the project requiring
> Marquart's blocks was ongoing as of June 2001, and
> thereafter." In other words, the district court concluded
> Marquart's notice was timely because the masonry portion of
> the project had not yet been completed.
>
> DDVI asserts this is an overly-broad interpretation of
> section 573.15 and *Lumberman's,* and runs counter to the
> supreme court's concern that delayed claims would erode a
> general contactor's protection under the statute. Focusing on
> the supreme court's use of the words "in which the

materials . . . are utilized," DDVI asserts materials are "utilized" when they are "installed," and Marquart has failed to affirmatively demonstrate that, when the invoices were supplied in June 2001, the materials noted on the invoices were in the process of being installed. DDVI accordingly suggests that notice will be timely only if an invoice is submitted to the general contractor at the time each individual shipment is made.

Marquart counters that *Lumberman's* cannot be read so narrowly. It asserts "that portion of the work in which the materials . . . are utilized" simply refers to the subproject for which those materials were supplied. It accordingly contends, consistent with the district court's ruling, that a notice will be timely provided the overall subproject is not yet complete.

We appreciate DDVI's concerns that the interpretation adopted by Marquart and the district court gives rise to the possibility that a general contractor could, under a particular set of facts, incur double liability. However, DDVI's interpretation requires this court to impose limitations that are not apparent in the plain language of section 573.15 or the *Lumberman's* decision-limitations that do not lend themselves to uniform application and that, under certain circumstances, would be impractical, unworkable, and render the thirty-day-notice alternative virtually meaningless. *See General Elec. Co. v. Iowa State Bd. of Tax Review,* 702 N.W.2d 485, 489 (Iowa 2005) (setting forth rules of statutory construction).

We agree with the district court that, under *Lumberman's,* "itemized invoices rendered to contractor during the progress of the work" are those invoices that are rendered to the general contractor prior to completion of the particular subproject for which those material[s] were supplied. Here, it is undisputed that the portion of the project for which Marquart supplied materials, the masonry portion of the project, was ongoing when the invoices for those materials were submitted to DDVI. Accordingly, Marquart's notice was timely under section 573.15.

*Marquart Block Co.*, 725 N.W.2d 658, 2006 WL 3018227 at *3. Thus, under *Marquart Block*, "during the progress of the work" means "prior to completion of the particular subproject for which those materials were supplied." but does not mean that the invoices must be rendered at the time the materials are "utilized" or "installed" on the actual project or "at the time each individual shipment is made."

From these decisions, and the plain language of the statute, it seems likely that, in most instances, the "30-day" alternative will expire before the "progress of the work" alternative will expire, because materials will ordinarily be furnished before the work on the pertinent portion of the work is completed. Thus, the "progress of the work" alternative ordinarily provides the *last* deadline for providing adequate notice, because that alternative does not expire until completion of the particular "subproject," *see Marquart Block Co.*, 725 N.W.2d 658, 2006 3018227 at *3, or "that portion of the work in which the materials for which claim is made are utilized," *see Lumberman's Wholesale Co.*, 402 N.W.2d at 416, which may well be much more than thirty days after the materials were "furnished."

Here, however, Accurate makes no attempt in its briefing to indicate when it furnished any materials or to calculate when, precisely, its time for adequate notice under the "30-day" alternative began or ended. Thus, like the defendants, the court can only presume that the latest that Accurate was furnishing materials was the date that Wubbens Electric and Accurate were 100% finished with work on the Division 17 part of the Jail Project, January 17, 2008, and that the thirty-day notice period ran from that date to February 16, 2008. Accurate also does not attempt to identify the precise period during which the particular "subproject" or "portion of the work" was in "progress," so that the court must again assume that Accurate's time to give adequate notice under the "progress of the work" alternative expired on the date that Wubbens Electric and Accurate were

100% finished with work on the Division 17 part of the Jail Project, January 17, 2008.

The parties' dispute here is not so much about timeliness, however, but about the adequacy of Accurate's notice to DSC under IOWA CODE § 573.15. This is so, because Accurate relies on various kinds of *indirect* notice to DSC that it was furnishing materials for the Jail Project during the Division 17 portion of the project, that is, prior to either expiration of the "progress of the work" period on January 17, 2008, or prior to the expiration of the "30-day" period on February 16, 2008. Certainly, Accurate does not contend that it gave notice *directly* to DSC of its claims for material furnished prior to answering the defendants' pertinent interrogatory in November 2008. Unfortunately, none of the Iowa decisions discussed above addresses precisely the questions presented here, which are how and by whom the general contractor must be "notified within thirty days after the materials are furnished"; how and by whom itemized invoices are to be "rendered to" the general contractor "during the progress of the work"; and under either alternative, precisely what constitutes adequate notice "of the amount, kind, and value of the material furnished for use upon the said public improvement." IOWA CODE § 573.15. Nevertheless, the language of the provision reasonably suggests that it is the claimant who must provide the required notice to the general contractor of the claimant's claim for materials supplied. *See id.* Accurate also cites no cases holding that only "substantial compliance" with the notice requirements of IOWA CODE § 573.15 is required.

Moreover, the defendants are correct that federal cases interpreting the Miller Act may provide guidance, but are not binding, on interpretation of comparable provisions of IOWA CODE CH. 573. *Iowa Supply Co. v. Grooms & Co. Constr., Inc.*, 428 N.W.2d 662, 665 (Iowa 1988). The Miller Act does not contain a precise correlate to IOWA CODE § 573.15, but does require notice to the general contractor of claims for material furnished for a public improvement project by a person with a direct contractual relationship only

with a subcontractor, in pertinent part, as follows:

**(b) Right to bring a civil action.—**

\* \* \*

> **(2) Person having direct contractual relationship with a subcontractor.—**A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond *on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.* The action must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

40 U.S.C. § 3133(b)(2) (emphasis added) (formerly 40 U.S.C. § 270(b)).[5]

---

[5]The language of former 40 U.S.C. § 270(b), with emphasis added, was as follows: Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond *upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied, the last of the material for which such claim is made*, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor at any place

(continued…)

As the defendants contend, some time ago, the Eighth Circuit Court of Appeals rejected an argument much like the one asserted here by Accurate that, by providing invoices for materials to a subcontractor, which the subcontractor then used to support its pay claims to the general contractor, a material supplier provided adequate notice of its claim for materials furnished. *See United States ex rel. American Radiator & Standard Sanitary Corp. v. Northwestern Eng'g Co.*, 122 F.2d 600 (1941). In *American Radiator*, the Eighth Circuit Court of Appeals explained the argument and its reasons for rejecting it, as follows:

> Plaintiff argues that, if a written notice was necessary, the invoices which it issued to the subcontractor as the materials were being furnished, and which the subcontractor appears in turn to have given the general contractor for use in arriving at the estimated payments which the government was to make during the progress of the work, should be regarded as a sufficient compliance with the statute. But the invoices were not presented to the contractor as the basis for a claim on the bond. They were furnished by plaintiff to the subcontractor as an ordinary commercial incident. When they were turned over by the latter to the general contractor, they were intended merely to indicate the material that had been furnished. They did not purport to show what payments had been made to plaintiff, or what amount was owing from the subcontractor within ninety days after the last of the material had been supplied. They clearly did not constitute a written notice on the part of plaintiff to the general contractor,

---

[5](...continued)

> he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.

> intended as the assertion of a claim upon the payment bond, and 'stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished'. They could accordingly not be treated as a substitute for [what] the statute imposed as a condition precedent to any right of action upon the bond.

*American Radiator*, 122 F.2d at 603.

Essentially the same reasoning is applicable here, although the statutory language concerning the timing and contents of the notice is not precisely the same. Here, Accurate's invoices were not presented to DSC as the basis for a claim on the bond. They were furnished by Accurate to Wubbens Electric as an ordinary commercial incident. When they were turned over by Wubbens Electric to DSC, they were intended merely to indicate the material that had been furnished. They did not purport to show what payments had been made to Accurate, or what amount was owing from Wubbens Electric to Accurate, either within thirty days of furnishing the materials or during the progress of the work on Division 17. They clearly did not constitute notice to DSC "thirty days after the materials [we]re furnished" or "itemized invoices rendered to [DSC] during the progress of the work, of the amount, kind, and value of the material furnished for use upon the [Jail Project]," as the basis for a "claim for material furnished" under IOWA CODE § 573.15. Accordingly, the invoices provided by Accurate to Wubbens Electric, and then provided by Wubbens Electric to DSC, could not be treated as a substitute for what IOWA CODE § 573.15 imposed as a condition precedent to any right of action by Accurate upon the retainage or the bond on a claim for material furnished to the Jail Project.

Because, Accurate did not, as a matter of law, comply with the notice requirements of IOWA CODE § 573.15, the defendants are entitled to summary judgment on that part of Accurate's claim that is for materials furnished on the Jail Project.

51

### 4. *Accurate's permissible recovery*

#### a. *Arguments of the parties*

In its motion for summary judgment, Accurate contends that it may recover its unpaid contract price, not just the reasonable costs of materials furnished and labor provided. Accurate contends that the Iowa Supreme Court's interpretation of IOWA CODE §§ 573.6 and 573.7, the purpose of IOWA CODE CH. 573, the remedies available under the Miller Act, which is the federal correlate of IOWA CODE CH. 573, and the remedies under Iowa's mechanic's lien statute, which is the state correlate of Chapter 573 for private construction projects, all support the conclusion that a claimant may recover its unpaid contract price.

The defendants counter that, not only do the authorities relied on by Accurate not support Accurate's position, the Iowa Supreme Court has considered and rejected Accurate's position. More specifically, as to the last point, the defendants cite, *inter alia*, *Byers Machine Co. v. Iowa State Hwy. Comm'n*, 242 N.W.2d 22, 24-25 (Iowa 1932), as holding that the terms of a claimant's contract are not the measure of recovery under Chapter 573, because the remedy must relate to the portion of the alleged labor, material, service, or transportation provided to the public improvement project. They also point out that the statute provides for claims for labor, material, service, or transportation, not for a claim for the unpaid contract price.

#### b. *Analysis*

Interesting as the question of whether a Chapter 573 claimant can recover its unpaid contract price might be in other circumstances, the court finds that it is mooted here by the court's determination that the defendants are entitled to summary judgment on that part of Accurate's claim that is for "material furnished" by failure to comply with the notice requirements of IOWA CODE § 573.15. Thus, Accurate is not entitled to its unpaid contract

price in this case, even if unpaid contract price were, in some cases, the appropriate measure of recovery in a Chapter 573 case, because Accurate may now only recover its "just claim due [it] for labor performed." IOWA CODE § 573.6; *see also* IOWA CODE § 573.7 (the claimant "may file . . . an itemized, sworn, written statement of the claim for such labor, or material, service, or transportation"). Accurate's motion does not properly place before the court the measure of Accurate's recovery on only the labor portion of its claim.

That part of Accurate's motion for summary judgment to the effect that it may recover its unpaid contract price on its Chapter 573 claim will be denied.

### 5.     *Continued viability of a Chapter 573 claim against the County Board*

#### a.     *Arguments of the parties*

The final issue raised in the parties' motions for summary judgment is the defendants' contention that the County Board is entitled to summary judgment, because it has properly paid to DSC all retainage that it was holding under IOWA CODE CH. 573, so that it is no longer a proper party to this litigation. Accurate responds that § 573.17 requires that the County Board be named as a defendant and that Accurate complied with § 573.17.

#### b.     *Analysis*

IOWA CODE § 573.17 provides as follows:

> The official board or officer letting the contract, the principal contractor, all claimants for labor and material who have filed their claim, and the surety on any bond given for the performance of the contract shall be joined as plaintiffs or defendants.

53

Thus, the statute did, as Accurate suggests, require Accurate to join the County Board as a defendant in its Chapter 573 actions.[6]

The parties have not cited, and the court has not found, any Iowa decision shedding light on whether a county board, joined as a necessary party pursuant to IOWA CODE § 573.17, may properly be dismissed once that board has released the retainage at issue in the Chapter 573 action. Nor has Accurate asserted that the County Board here improperly released the retainage. *See, e.g.,* IOWA CODE §§ 573.12 (providing for payments and retention from payments on contract); 573.14 (providing for release of the retainage upon certain conditions); 573.15A (providing for early release of the retainage upon certain conditions). Nevertheless, release of the retainage does not mean that the County Board no longer has any interest in the Chapter 573 proceedings. The retainage is not the sole source of funds to satisfy a Chapter 573 claim; rather, the claim is also against the *bond*, and if, for example, the retainage is exhausted, the bond is used to satisfy the claims. *See, e.g.,* IOWA CODE §§ 573.16 (the action on a claim pursuant to Chapter 573 is to "adjudicate all rights to said fund [from retainage], or to enforce liability on said bond); 573.22 ("If, after the said retained percentage has been applied to the payment of duly filed and established claims, there remain any such claims unpaid in whole or in part, judgment shall be entered for the amount thereof against the principal and sureties on the bond. In case the said percentage has been paid over as herein provided, judgment shall

---

[6]The court notes that the County Board had subsequently asserted counterclaims against Accurate, so that, while those claims were pending, the County Board plainly did not want to be dismissed from this action entirely. The parties have agreed to sever, stay, and continue those claims for separate resolution from the Chapter 573 issue. Nevertheless, the court assumes that the County Board no longer seeks dismissal from this action entirely, but only summary judgment in its favor on Accurate's Chapter 573 claim against it, because it has properly released the Chapter 573 retainage.

be entered against the principal and sureties on all such claims."). Moreover, even after the retainage has been released, the County Board remains the entity to which the bond required by IOWA CODE § 573.2 shall run. IOWA CODE § 573.5 ("Said bond shall run to the public corporation."). Thus, because the bond "runs to" the County Board, and judgment may be entered on the bond, the County Board still has sufficient interest to remain a party to the Chapter 573 proceedings.

Therefore, the County Board is not entitled to summary judgment in its favor on the ground that it has paid the retainage required by Chapter 573.

### III. CONCLUSION

Upon the foregoing,

1.    The defendants' February 12, 2009, Motion For Summary Judgment (docket no. 27) is **granted in part and denied in part**, as follows:

    a.    That part of the defendants' motion asserting that Accurate has failed to comply with IOWA CODE § 573.16's filing requirements and statute of limitations, so that the entire case should be dismissed, is **denied**;

    b.    That part of the defendants' motion asserting that IOWA CODE § 573.16 deprives this court of the ability to grant Accurate's requested relief and/or deprives this court of subject matter jurisdiction, so that the entire case should be dismissed, is **denied**;

    c.    That part of the defendants' motion asserting that Accurate failed to comply with IOWA CODE § 573.15's notice requirements, so that its claim for payment for materials is barred, is **granted**; and

d. That part of the defendants' motion asserting that the County Board has properly paid to DSC all retainage that it was holding under IOWA CODE CH. 573, so that the County Board is no longer a proper party, is **denied**.

2. Plaintiff Accurate's February 12, 2009, Motion For Summary Judgment (docket no. 29) is also **granted in part and denied in part**, as follows:

a. That part of Accurate's motion asserting that it timely filed a claim under IOWA CODE § 573.7 and timely filed the instant civil actions in this court is **granted**;

b. That part of Accurate's motion asserting that Iowa law provides that it may recover its unpaid contract price is **denied as moot**, where the defendants are entitled to summary judgment on that portion of Accurate's claim that is for material furnished;

c. That part of Accurate's motion asserting that it was not a material supplier, so that it was not required to comply with the notice requirements of IOWA CODE § 573.15, is **denied**.

**IT IS SO ORDERED.**

**DATED** this 18th day of June, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA